**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JAMARYUS MOORE,

    Defendant - Appellant.

No. 22-3173

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:18-CR-10073-JWB-2)**
_____

Jacob R. Rasch-Chabot, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, and Grant R. Smith, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant – Appellant.

Bryan C. Clark, Assistant U.S. Attorney, Kansas City, Kansas (Kate E. Brubacher, U.S. Attorney, James A. Brown, Assistant U.S. Attorney, Chief Appellate Division, and Molly M. Gordon, Assistant U.S. Attorney, Wichita, Kansas, on the brief), District of Kansas, for Plaintiff – Appellee.

_____

Before **TYMKOVICH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

# I. INTRODUCTION

Jamaryus Moore robbed a liquor store at gunpoint. He pleaded guilty to Hobbs Act robbery. *See* 18 U.S.C. § 1951(a). Although he faced an advisory Sentencing Guidelines range of 51 to 63 months, he requested a downward variance to a term of probation. The district court gave Moore a choice: accept a 51-month sentence of imprisonment or commit to a term of probation with the understanding that a violation of its terms of supervision would result in an 84-month sentence. Moore chose probation. When he violated the terms of his probation, the district court imposed the previously promised 84-month sentence. Moore appealed and this court reversed. *United States v. Moore*, 30 F.4th 1021, 1022 (10th Cir. 2022). *Moore* concluded the district court plainly erred "by employing its sentence-in-advance system." *Id.* at 1025. Instead, according to *Moore*, upon revoking a sentence of probation, district courts commit themselves "to a two-step process." *Id.* at 1026. *Moore* described the required two-step process in some detail. *Id.* at 1026-27. On remand, the district court, without any objection from Moore, utilized *Moore*'s two-step process and imposed a sentence of 80 months' imprisonment.

Moore appeals, asserting the district court plainly erred in calculating his sentence using *Moore*'s two-step process. In so arguing, he contends the law of the case doctrine has no impact on the existence of error or on that asserted error's plainness because (1) *Moore*'s discussion of the mandated two-step process is dicta and, in any event, (2) its two-step process falls within the exception to the doctrine for decisions that are clearly erroneous and would work a manifest injustice. This court concludes the discussion in *Moore* of the required two-step process upon revocation of probation is not dicta. Instead,

it is a critical component of *Moore*'s conclusion that the district court erred in employing a "sentence-in-advance system." *Id.* at 1024-25. Furthermore, although this court is not without some doubt as to the correctness of *Moore*'s mandatory two-step process, the decision is not so clearly erroneous that this panel is entitled to disregard it in evaluating whether the district court plainly erred. In any event, Moore has not demonstrated that adhering to the rule of law set out in *Moore* would work upon him a manifest injustice. Thus, exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **affirms** the district court's judgment.

## II. BACKGROUND

In 2018, Moore walked into a liquor store, pointed a handgun at the store clerk; and demanded money. The clerk placed $100 in a plastic bag and gave the bag to Moore. Authorities apprehended Moore shortly thereafter. Eventually, Moore pleaded guilty to a single count of violating § 1951(a). A United States Probation Officer prepared a Presentence Investigation Report ("PSR); the PSR concluded Moore was subject to an advisory sentencing range of 51 to 63 months' imprisonment. Despite facing an advisory sentencing floor of 51-months' imprisonment, Moore requested a non-custodial sentence. The district court initially hesitated at Moore's request, but ultimately gave him a choice: accept a 51-month sentence of incarceration or commit to a term of probation with the understanding a violation of the terms of supervision would result in an 84-month sentence of incarceration. Moore chose probation.

About ten months after he was sentenced, Moore violated the conditions of his probation. A United States Probation Officer concluded Moore's violations were of the

3

Grade C variety—the least serious type set out in U.S.S.G. § 7B1.4(a)—and recommended an advisory sentencing range of 5 to 11 months' imprisonment. The parties agreed with this recommendation. Nevertheless, focusing on the bargain it previously struck with Moore, the district court revoked Moore's probation and sentenced him to an 84-month term of imprisonment. Moore appealed, challenging the procedural and substantive reasonableness of his 84-month sentence.

Employing plain error review, this court reversed and remanded. We held that the district court's "sentence-in-advance system [was] procedurally unreasonable." *Moore*, 30 F.4th at 1025. In reaching this conclusion, *Moore* began by recognizing the provisions of 18 U.S.C. § 3565(a) give district courts two options when a defendant violates "a condition of probation." *Id.* at 1026. District courts can (1) continue a defendant "on probation with or without modifications to the term or conditions" or (2) revoke probation and "resentence" the defendant under the provisions of 18 U.S.C. §§ 3551 to 3559. *Id.* Because it revoked Moore's probation, *Moore* held the district court "committed itself to a two-step process under § 3565(a)(2)." *Id.* After describing how that two-step process operates, *id.* at 1026-27, *Moore* summarized it as follows:

> In short, when revoking probation and resentencing under § 3565(a)(2), the Sentencing Guidelines and [*United States v. Kelley*, 359 F.3d 1302, 1306 (10th Cir. 2004)] require district courts to undertake a two-step analysis. First, they must consider the recommended guideline range in a PSR and impose a sentence for the originally charged crime based only on a defendant's *pre*-probation conduct.[1] And second, they must consider

---

[1] *Moore* explained that the first step of the required process originated from the statutory language of § 3565(a)(2) and the prefatory language of Chapter 7 of the Sentencing Guidelines:

> Chapter 7's policy statements and sentence a defendant for the probation violation based only on the defendant's *post*-probation conduct.[2]

30 F.4th at 1027.

Applying that process to the facts of Moore's case, *Moore* held that, at step one, the district court "locked itself into 51 months' imprisonment." *Id.* at 1026. This was so because "the district court had already announced that a 51-month sentence of imprisonment was the appropriate sentence for" Moore's crime and had done so "after considering [] Moore's pre-probation-sentence conduct and the § 3553(a) factors. *Id.* At step two, *Moore* recognized the sentencing grid set out in U.S.S.G. § 7B1.4 "yielded [a

---

> [A]s the word "resentencing" suggests, a district court must reevaluate the case as it stood when [it] imposed probation. Under § 3553(a)(4)(A), that takes the court back to the probation office's recommendations, the parties' objections, and the § 3553(a) factors, including a defendant's history, characteristics, and conduct *pre*-probation-sentence. The Introduction to Chapter Seven of the Sentencing Guidelines Manual sums it up well: "Under current law, if the court finds that a defendant violated a condition of probation, the court may . . . revoke probation and impose *any other sentence that initially could have been imposed*." U.S.S.G. ch. 7, pt. A, background.

30 F.4th at 1026 (emphasis in original).

2 *Moore* held that the second part of the required process originated from the provisions of 18 U.S.C. § 3553(a)(4), as that provision was interpreted in *Kelley*:

> At the second step, and *separately*, as laid out in [*Kelley*, 359 F.3d at 1306], a district court must apply the policy statements in Part B . . . of Chapter Seven . . . to impose any penalty "for the violation of the judicial order imposing supervision." U.S.S.G. ch. 7, pt. B, introductory cmt. Indeed, Chapter Seven . . . provides its own sentencing grid . . . . So at this second step, the district court must consider the § 7B1.4 sentencing grid for the probation violation—*not the sentencing guidelines for the underlying offense*.

30 F. 4th at 1026 (emphasis in original).

5

5-to-11 month advisory term for [] Moore's probation violation." *Id.* With all this in

mind, *Moore* concluded the district court erred because "nothing in the record suggests

that either [it] or the parties undertook the needed two-step analysis." *Id.* at 1027.

Furthermore, this error affected Moore's substantial rights because it was "unclear what

sentence the [district] court would have imposed after explaining its two-step analysis at

sentencing. *Id.* Moore did not seek panel or en banc rehearing.

On remand, the district court conducted a new sentencing hearing. It summarized

the history of the case and explained its understanding of *Moore*'s mandate:

> [T]he Court of Appeals basically described the process [district courts are]
> supposed to follow when revoking a sentence of probation and described
> that the process is a two-step process in which [district courts are] at the
> first step is to reevaluate the case as it stood when the [district court]
> imposed probation . . . .
>
> . . . .
>
> Then there's a second step in the process at which [district courts
> are] to follow the policy statements in Part B of Chapter 7 of the sentencing
> guidelines to determine what additional sanction should be imposed on top
> of that base sentence for the breach of trust associated with the probation
> violations.
>
> . . . .
>
> I don't think I'm supposed to revisit the 51 months that I previously
> determined would have been an appropriate sentence for the armed robbery
> conviction[3] but I am supposed to reevaluate the additional component of
> the sentence associated with his probation violation and then ultimately

---

[3] The district court took care to clarify that if it misinterpreted *Moore* and was
entitled to reconsider the step-one 51-month sentence for the robbery conviction, it
"would not go any less than 51 months." It would, however, consider a step-one
component of more than 51 months' imprisonment.

6

describe all that and make a record on it and combine those two for a total sentence that would be imposed today.

The parties agreed with the district court's assessment of the procedural posture of the new sentencing proceeding. In so agreeing, Moore noted as follows: "This is not how [I] had suggested it should happen before the Tenth Circuit. [I] had proposed a different way of analyzing it under some different statutes but the Tenth Circuit has said this is what we need to do and this is where we are."[4]

Given that all parties agreed the appropriate focus of the new sentencing proceeding was *Moore*'s second step—utilizing Chapter 7 of the Sentencing Guidelines to arrive at an appropriate sentencing component for Moore's violations of the terms of his probation—the district court turned to that task. It noted that, at the prior hearing, Moore was placed under oath and admitted the violations. Although it did not see any need to revisit Moore's admissions, it was concerned the record did not adequately establish the "significance of some of those violations." Accordingly, at the district court's direction, the government adduced evidence as to the seriousness of Moore's

---

[4] This court has taken judicial notice of the briefs Moore filed in his previous appeal. *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) ("The court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." (alteration and quotation omitted)). A review of those briefs makes clear that argument Moore raised in his first appeal, but gave up (i.e., abandoned) on remand, is not in any way similar to the argument he now raises in this appeal. *See infra* Section III.B. (concluding the argument Moore advanced in this appeal is forfeited but not waived). Instead, in his prior appeal, Moore argued the district court erred in relying on the "sentencing bargain" it reached with Moore in arriving at a post-probation-revocation sentence because such bargains did not fall within any of the sentencing factors set out in § 3553(a).

violations of the conditions of his probation.[5] In addition, Moore testified on his own

behalf and the parties were given a chance to make their sentencing recommendations.

Finally, Moore made a statement to the court on his own behalf.

The district court then imposed sentence. It indicated it considered "the nature and

circumstances of" Moore's violations of the terms of his probation, Moore's

characteristics, the statutory sentencing objectives, Chapter 7's non-binding policy

statements, and *Moore*'s mandate. It reiterated that it was locked into a 51-month

sentence as to step one concerning the Hobbs Act robbery. As to step two, the district

court recognized that § 7B1.4 provided an advisory sentencing range of 5-11 months'

incarceration. It nevertheless varied upward significantly from the advisory range,

making a specific and detailed record as to its reasons for doing so.[6] Ultimately, the

---

[5] A probation officer testified about Moore's violations. She testified Moore was pulled over in Seattle, Washington, in a stolen van with two ski masks and three other people, two of whom were arrested at the scene on felony warrants. Moore refused to give his name and, ultimately, gave a false name during this encounter. Moore had contact with the police again the following day and was taken into custody due to an outstanding federal warrant. Before he left Kansas for Washington state, Moore knew he had a federal court hearing regarding other violations of the conditions of his parole. Instead of appearing for that hearing, he absconded.

[6] Relying on Application Note 4 to § 7B1.4, the district court recognized Moore received a substantial downward variance at his initial Hobbs-Act-robbery sentencing proceeding. Although Moore committed an armed robbery and was facing an advisory sentencing range of 51 to 63 months' imprisonment, he received a sentence of probation. Noting this sentence amounted to the largest downward variance it had ever granted, the district court relied on Application Note 4 to conclude Moore's current violation was a "stunning breach of trust." It concluded an upward variance of 12 months to the advisory range in § 7B1.4 was an appropriate adjustment to the step-two sentence.

The district court then turned its focus to the probation violation of leaving the District of Kansas. Although categorized as a Grade C violation, the district court

district court concluded the appropriate step-two advisory sentencing range was 32 to 38 months' imprisonment. This range, when combined with the 51-month term of imprisonment from step-one, resulted in a total advisory range of 83 to 89 months' incarceration. The district court sentenced Moore to an 80-month term of imprisonment.

## III. ANALYSIS

### A. Introduction

Moore asserts the district court erred when it utilized *Moore*'s two-step process to arrive at his sentence upon revocation of probation. He contends the provisions of the United States Code governing criminal sentencing do not authorize a two-step procedure. Instead, Moore claims that, upon revocation of probation, district courts must sentence defendants in accordance with §§ 3551 to 3559. *See* 18 U.S.C. § 3565 (providing that

---

explained why the violation was more serious than it appeared. Moore traveled to Washington state, removing any question as to the intentional nature of his violation. He was caught in a stolen car in the company of three other felons, two of which were immediately arrested on outstanding warrants. There were ski masks in the car and Moore lied to the officers to conceal his identity. Moore's trip to Seattle came after he was alerted to an upcoming hearing to address his violations. Thus, the district court concluded Moore's actions amounted to absconding. It also found Moore's testimony about the trip lacked credibility. The district court concluded an additional 9-month upward variance to § 7B1.4's advisory sentencing range was appropriate based on these considerations.

Finally, the district court determined an adjustment to § 7B1.4's advisory sentencing range was necessary because Moore repeatedly lied to the court and his probation officer. These lies included getting kicked out of a residential facility, lying about a police encounter and claiming it was his brother, lying about the reasons for his prohibited visits to Wichita, and lying about the reasons for absconding to Seattle. The district court viewed Moore's behavior as "deceptive conduct and the nature of obstruction of justice to help minimize or avoid detection on some of these violations, or minimize the significance of it." Given this conduct, the district court varied upward an additional 6-months from § 7B1.4's sentencing grid.

upon revocation of probation, district courts must resentence defendants under Subchapter A of Chapter 227 of Title 18). Moore notes that, in relevant part, Subchapter A requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the sentencing factors set out in § 3553(a). According to Moore, § 3553(a) speaks in the singular of "a sentence," making no mention of a two-step procedure whereby a court fashions one sentence based on pre-probation facts and one sentence based on post-probation facts. Moreover, Moore argues, § 3553(a)(4) requires district courts, "in the case of a violation of probation," to consider the Chapter 7 sentencing ranges and policy statements before imposing a sentence. In contrast to this statutory command, Moore claims the district court conducted two distinct § 3553(a) analyses, one based on the original advisory Sentencing Guidelines for Hobbs Act robbery—i.e., Chapters 2 through 5—and a second based on Chapter 7's sentencing ranges and policy statements.

Moore submits that the Sentencing Guidelines confirm that district courts are not empowered to fashion two different sentences based on pre-probation and post-probation facts respectively. He notes that Chapter 7, like § 3553(a), speaks in the singular when it refers to "the sentence imposed upon revocation," "a term of imprisonment," and "the applicable range of imprisonment." *See* U.S.S.G. ch. 7, pt. A.3; § 7B1.3(b), (e). Chapter 7 also provides a comprehensive list of considerations the court must weigh when fashioning the appropriate probation revocation sentence. U.S.S.G. § 7B1.4 cmt. nn.1-6. Moore declares that nowhere in this list of considerations is there any hint district courts are entitled, let alone obligated, to make two siloed sentencing determinations based on

pre-probation and post-probation facts. In that regard, Moore asks this court to recognize that when the Sentencing Commission intends to impose complex, multi-part procedures, it methodically describes those procedures. *See*, *e.g.*, U.S.S.G. § 3D1.1. Further undermining any notion that there exists a rigid pre-probation/post-probation division upon revocation, Moore observes that the Sentencing Guidelines expressly detail how the original sentence should factor into the district courts' probation-revocation-sentencing decisions. Application Note 4 to § 7B1.4 explains courts should consider the amount of leniency given at original sentencing hearings when fashioning probation revocation sentences. Specifically, if the original sentence was a result of a downward departure, an upward departure might be appropriate for the probation violation. U.S.S.G. § 7B1.4 cmt. n.4.

Moore thus argues the district court erred on remand in imposing any part of his post-revocation sentence on any factor other than those set out in Chapter 7 of the Sentencing Guidelines. That is, the district court erred in imposing a 51-month sentence at *Moore*'s step one based on pre-revocation, non-Chapter 7 considerations. *See* U.S.S.G. ch. 7, pt. A.2 ("The statutory authority to 'suspend' the imposition or execution of sentence in order to impose a term of probation was abolished upon implementation of the sentencing guidelines.").[7]

---

[7] To be precise, Moore breaks apart his claim of error into two components. First, he argues the district court erred, both at step-one and in imposing an overall sentence, by failing to consider Chapter 7. Second, he claims the district court erred in imposing two different sentences, one based entirely on pre-probation facts and one based on facts relating exclusively to his probation revocation. In this court's view, these claims sufficiently overlap so that they can be treated together in

## B. Standard of Review

Moore recognizes he did not raise before the district court the sentencing challenge he raises on appeal. Accordingly, he asserts this court should review the matter for plain error. For its part, the government contends Moore affirmatively waived his challenge to the propriety of the district court's two-step sentencing process. This court can detect no indication in the record that Moore "intentional[ly] relinquish[ed] or abandon[ed] . . . a known right," *see United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) (quotation omitted), when he conceded below that the district court was bound by *Moore* to utilize a two-step sentencing process. Thus, he forfeited, rather than waived, the issue he now raises on appeal.

"Typically," this court does "not address arguments raised for the first time on appeal." *EFLO Energy v. Devon Energy Corp.*, 66 F.4th 775, 792 (10th Cir. 2023). If a theory "simply [was not] raised before the district court," it is forfeited and this court may reverse only if an appellant satisfies the rigorous plain error standard. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011). On the other hand, when a party intentionally relinquishes or abandons an argument in the district court, this court "usually deem[s] it waived and refuse[s] to consider it." *Id.* at 1127. Waiver "occurs when a party deliberately considers an issue and makes an intentional decision to forgo"

---

resolving this appeal. Both rely on the same statutory and Sentencing Guidelines language to argue that a sentence imposed upon revocation of probation must be a single component sentence based on the provisions of § 3553(a) and sentencing considerations set out in Chapter 7. Furthermore, both rise or fall based on Moore's ability to convince this court it can disregard *Moore*'s holding as to the requisite sentencing process district courts must undertake upon revocation of probation.

raising it. *United States v. Malone*, 937 F.3d 1325, 1327 (10th Cir. 2019). Abandonment

"requires some evidence that the waiver is knowing and voluntary." *United States v. Egli*,

13 F.4th 1139, 1144 (10th Cir. 2021). In summary, "waiver is accomplished by intent, but

forfeiture comes about through neglect." *Id.* (quotation and alteration omitted). Given

such an exacting standard, this court "typically find[s] waiver in cases where a party has

invited the error that it now seeks to challenge, or where a party attempts to reassert an

argument that it previously raised and abandoned below." *United States v. Zubia-Torres*,

550 F.3d 1202, 1205 (10th Cir. 2008); *see also id.* at 1205-07 (discussing at length the

cases in which this court has found a waiver).

The government asserts Moore waived his appellate argument because he

(1) failed to seek panel or en banc rehearing following the decision in *Moore*; (2) failed to

object to the two-step procedure when the district court summarized that procedure at the

beginning of the on-remand sentencing hearing, instead acknowledging "[t]hat is how the

Tenth Circuit has said this needs to happen"; and (3) made an argument concerning the

appropriate sentence under *Moore*'s two-step framework. In contrast to the government's

assertions, none of these actions demonstrate an intentional abandonment on Moore's

part. Although the failure to object certainly means the issue is not preserved, it only

signifies an abandonment if it is accompanied by indications of knowing and voluntary

intent. The only such purported evidence identified by the government is the failure to

seek rehearing in *Moore* and a recognition at the on-remand sentencing proceeding that

*Moore* governed. The fact Moore was aware of, and thought the district court bound by,

*Moore*'s two-step process does not evidence he was aware of, and consciously

13

disregarded, the issue with the two-step process he now raises on appeal. After all, as noted by Moore in his reply brief, he had nothing to gain by consciously electing to proceed under *Moore*'s two-step process. Under that process, he started at a 51-month step-one sentence, with much room to grow under step-two; under the process he presses on appeal, he starts at an advisory sentencing range of 5 to 11 months' imprisonment with the further requirement that any deviations from the advisory range be hitched to Chapter 7 and § 3553(a). The relevant question is whether Moore identified the alleged contra-statutory basis of *Moore*'s two-step process during the district court proceedings and made a conscious decision to abandon the issue. There is no such evidence in the record. Thus, the issue he raises on appeal is forfeited, not waived.

To obtain reversal on his forfeited claim of error, Moore must demonstrate the district court committed plain error. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014). That is, he must "demonstrate: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1258 (quotation and emphasis omitted). "[R]elief on plain error review is difficult to get, as it should be." *Id.* (quotations omitted). "Accordingly, we will find plain error only when an error is particularly egregious and the failure to remand for correction would produce a miscarriage of justice." *Id.* (quotation omitted).

## C. Merits

As both parties recognize, Moore can only establish plain error on the part of the district court by identifying a justification for this court to disregard the two-step process set out in *Moore*. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quotation and citation omitted)). Attempting to do so, Moore argues this court is not bound by *Moore* because *Moore*'s discussion of the two-step process is dicta. In the alternative, assuming the relevant discussion in *Moore* is not dicta, Moore asserts this court can disregard *Moore* under an exception to the law of the case doctrine for decisions that are "clearly erroneous and would work a manifest injustice." *Monsisvais*, 946 F.2d at 117 (quotation omitted). As set forth more fully below, *Moore*'s discussion of the mandatory post-revocation sentencing process is not dicta. Furthermore, even assuming the clearly-erroneous/manifest-injustice exception to the law of the case doctrine could potentially allow this court to disregard *Moore*, Moore has not established either of the two required components of that exception.

### 1. Dicta

"A panel of this Court is bound by a holding of a prior panel . . .  but is not bound by a prior panel's dicta." *United States v. Titties*, 852 F.3d 1257, 1273 (10th Cir. 2017)

15

(quotation and alteration omitted). "Dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case at hand." *Id.* (quotation and alteration omitted). Notably, this court has cautioned that adopting an "expansive view of what constitutes dicta" would interfere with bedrock principles of stare decisis. *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1130 (10th Cir. 2009). Given this standard, this court must reject Moore's assertion that *Moore*'s mandated two-step sentencing process upon revocation of probation is dicta.

*Moore* specifically held that when a district court revokes probation, it "commit[s] itself to a two-step process under § 3565(a)(2)." 30 F.4th at 1026. In concluding the district court's error in failing to utilize that two-step process was plain, *Moore* held that the requisite two-step process flowed directly from the "plain" provisions of the United States Code relating to imposing criminal sentences; Chapter 7 of the Sentencing Guidelines; and this court's precedents, particularly our decision in *Kelley*, 359 F.3d at 1306. *Moore* 30 F.4th at 1026-27. Finally, *Moore* held that the plain error it identified affected Moore's substantial rights because there existed a reasonable probability the identified error altered the sentence Moore received. *Id.* at 1027. That is, there existed a reasonable probability Moore would have received a different sentence upon revocation of his probation if the district court had properly employed the mandated two-step process set out in *Moore*. *Id.* ("Here, there is such a reasonable probability because it's unclear what sentence the court would have imposed after explaining its two-step analysis at sentencing."). Importantly, this court has previously held that when it is

16

necessary to define a legal standard to analyze the substantial-rights prong of plain error review, the explication of that legal standard is not dicta. *United States v. Carillo*, 860 F.3d 1293, 1301 n.2 (10th Cir. 2017). Nor is it relevant *Moore* did not consider the arguments Moore now presses in resolving his prior appeal. *Thompson*, 582 F.3d at 1130 (holding, in the context of rejecting an assertion a rule of law announced by a prior panel was dicta, that the question did not turn on "what might have happened had other arguments been made to the panel that decided the issue first").

The two-step sentencing process set out in *Moore* was integral to its holding that the district court plainly erred and that the error affected Moore's substantial rights. Accordingly, that two-step process is not dicta but is, instead, binding Tenth Circuit precedent. *See*, *e.g.*, *Titties*, 852 F.3d at 1273; *Thompson*, 582 F.3d at 1129-30.

### 2. Law of the Case

Pursuant to the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Monsisvais*, 946 F.2d at 115 (quotation omitted). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) (quotation omitted). "Particularly with today's crowded dockets, a litigant given one good bite at the apple should not have a second. In short, it is almost axiomatic that one panel of this court cannot overrule another panel." *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (quotation and citation omitted). Nevertheless, the law of the case doctrine is a rule of practice, not a limit on the power of

17

the court. *Monsisvais*, 946 F.2d at 116. That is, the doctrine "is not an inexorable command, but is to be applied with good sense." *Id.* at 117 (quotations omitted). "Nevertheless, the circumstances justifying a departure from the law of the case are narrow." *Id.*

This court has recognized three generalized exceptions to the doctrine's applicability. *Id.* The only such exception raised by Moore on appeal is the one for decisions that are "clearly erroneous and would work a manifest injustice." *Id.*; *see also United States v. Irving*, 665 F.3d 1184, 1192 n.12 (10th Cir. 2011). All three exceptions to the doctrine, specifically including the clearly-erroneous/manifest-injustice exception, are construed narrowly, requiring application of the doctrine "unless one of the exceptions specifically and unquestionably applies." *Monsisvais*, 946 F.2d at 117 (quotation omitted). Moore has not demonstrated *Moore*'s holding is clearly erroneous. Nor has he demonstrated the application of *Moore*'s holding to him would work a manifest injustice. Having failed to demonstrate both requirements of the clearly-erroneous/manifest-injustice exception, Moore has not provided this court with a valid justification for avoiding the law of the case set out in *Moore*. *See Monsisvais*, 946 F.2d at 117 (describing the two requirements of the clearly-erroneous/manifest-injustice exception in the conjunctive); *see also United States v. Lake*, 556 F. App'x 706, 708 (10th Cir. 2014) (unpublished disposition cited exclusively for its persuasive value) (holding that there was no need to decide whether a prior panel's decision was clearly erroneous because there existed no manifest injustice); *United States v. Nichols*, 38 F. App'x 534, 542 n.5 (10th Cir. 2002) (unpublished disposition cited exclusively for its

persuasive value) ("Because we find our prior rulings were not clearly erroneous, we need not consider whether those rulings worked a manifest injustice.").

This court notes at the outset that there is reason to doubt whether the clearly-erroneous/manifest-injustice exception empowers this court to disregard a prior panel's legal ruling. *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1281 n.5 (10th Cir. 2010) (declining to resolve the issue but noting that reading the exception to empower such conduct would place it at odds with the Tenth Circuit's strong mandate of stare decisis). It is unnecessary to resolve this question because the court cannot say the relevant holding in *Moore* is clearly erroneous. In trying to demonstrate the two-step post-revocation sentencing process set out in *Moore* is clearly erroneous, Moore faces a "formidable task." *Alvarez*, 142 F.3d at 1247. Indeed, twenty-five years ago, this court noted that "while courts may often pay lip service to the clearly erroneous/manifest injustice exception, they rarely, if ever, invoke it." *Id. Alvarez* cataloged the caselaw and noted that it could discover only one case, in the Ninth Circuit, "in which a panel used this exception." *Id.* (citing *Jeffries v. Wood*, 75 F.3d 491, 493-94 (9th Cir. 1996)). And there, the en banc Ninth Circuit reversed, holding that the panel erred in concluding the stringent clearly-erroneous/manifest-injustice standard was satisfied. *Id.* (citing *Jeffries v. Wood*, 114 F.3d 1484, 1492-93 (9th Cir.) (en banc), *cert. denied*, 522 U.S. 1008 (1997)). Notably, Moore has not identified any additional such cases since this court decided *Alvarez*. The reason for this state of affairs is that to meet the "high burden" of the exception, an appellant must show the prior decision was "dead wrong" not "just maybe or probably wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

19

Moore has not satisfied this onerous burden. If presented with the issue as one of first impression, this panel might very well conclude Moore's reading of the relevant statutes and Sentencing Guidelines is correct. Nevertheless, *Moore* cites to and analyzes all relevant statutes and Guidelines provisions, grapples with this court's precedents, and sets out a reasoned and considered legal determination.[8] The plausibility of the scheme set out in *Moore* is confirmed by Moore's failure, through multiple additional procedural steps in this litigation, to arrive at the argument he now raises on appeal. *See United States v. Hendrix*, 673 F. App'x 850, 854-55 (10th Cir. 2016) (unpublished disposition cited exclusively for its persuasive value). Moore has not demonstrated the decision in *Moore* is so blatantly erroneous that this panel is entitled to be the first to employ the clearly-erroneous/manifest-injustice exception to disregard a prior legal determination by a panel of this court.

Nor, under the particular facts of this case, can Moore demonstrate manifest injustice. Importantly, there is no doubt that even under the sentencing scheme advocated by Moore, he could receive the very same sentence the district court imposed on remand. Subpart 2 to Part A of Chapter 7 makes clear that upon revocation of probation, district courts are legally empowered to "impose any sentence that initially could have been

---

[8] In concluding *Moore*'s relevant holding is not dead wrong, this court declines to undertake the kind of extensive comparative analysis suggested in Moore's appellate brief. Such an approach would defeat the very purposes of the law of the case doctrine. *Alvarez*, 142 F.3d at 1247 ("This doctrine is based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided. Of course, this rule also serves the purposes of discouraging panel shopping at the court of appeals level." (citation and quotations omitted)).

imposed." The statutory maximum for a violation of the Hobbs Act is twenty years' imprisonment. 18 U.S.C. § 1951(a). It is certainly true, as Moore argues, the district court would be obligated to consider the sentencing factors set out in Chapter 7, specifically including the 5-to-11-month advisory sentencing ranges set out in § 7B1.4(a), in fashioning his unified sentence under the scheme he advocates. Nevertheless, the district court would also be entitled to take into account each of the considerations set out in § 3553(a) in deciding whether to vary from §7B1.4(a) advisory sentencing ranges. The record in this case leaves absolutely no doubt the district court would not impose a lower sentence under the scheme advocated for by Moore. Nor, given the district court's careful development of the record regarding the nature of Moore's violations of the conditions of his probation, does there exist any reasonable probability this court would conclude on appeal that such a sentence, even though a truly substantial upward variance, is substantively unreasonable. *See United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018) (describing at length the exceedingly broad nature of the district court's discretion in arriving at a substantively reasonable sentence). Indeed, although Moore argued in *Moore* that his sentence was unreasonable, 30 F.4th at 1024, he has made no such argument in this appeal.

### 3. Conclusion

*Moore*'s holding—that upon revocation of a term of probation district courts commit themselves to the two-part sentencing scheme set out therein—is not dicta. Nor can Moore escape that holding through the clearly-erroneous/manifest-injustice exception to the law of the case doctrine. Thus, in considering whether the district court committed

plain error in sentencing Moore on remand, this court is bound by the rule of law set out in *Moore*. Obviously then the district court did not err, let alone plainly do so, when it complied with *Moore*'s mandate.

### IV. CONCLUSION

For those reasons set out above, the judgment of the United States District Court for the District of Kansas is hereby **AFFIRMED**.