**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 2 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

HAROLD KELLEY,

      Defendant - Appellant.

No. 03-5112

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 00-CR-100-H)**

**Submitted on the briefs:**[*]

Randy Lynn, Tulsa, Oklahoma, for Defendant-Appellant.

David E. O'Meilia, United States Attorney, and Kevin Danielson, Assistant United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **EBEL**, **HENRY** and **HARTZ**, Circuit Judges.

**EBEL**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case therefore is ordered submitted without oral argument.

Defendant Harold Kelley was sentenced to an 18-month prison term after he violated the conditions of his supervised release for a second time. Kelley now contends that this sentence was plainly unreasonable. We disagree.

## BACKGROUND

The facts relevant to this appeal are not in dispute. Kelley pled guilty to one count of conspiracy to defraud a financial institution in violation of 18 U.S.C. §§ 371 and 1344(1). The maximum term of imprisonment for that offense was five years, and the guideline range for imprisonment was six to 12 months under the circumstances. The district court sentenced Kelley to nine months imprisonment followed by three years of supervised release.

After completing his prison term, Kelley violated the conditions of his supervised release by failing to report his change of residence, failing to report for substance abuse treatment, and testing positive for cocaine. For this violation, Kelley's supervised release was revoked and he was sentenced to another six months imprisonment and another 30 months of supervised release.

Once again, after serving his sentence Kelley violated the terms of his supervised release, this time by failing to report to the probation office upon release from imprisonment. During sentencing for this violation, the government sought a sentence without supervised release because "it would be a waste of

Probation's time trying to hunt Mr. Kelley down again and again and again." The defense agreed that it "would probably be a good idea if there wasn't a term of supervised release afterwards, because apparently Mr. Kelley and supervised release don't get along terribly well." The district court sentenced Kelley to 18 months imprisonment, the maximum that could be imposed upon revocation of Kelley's supervised release under the circumstances.[1]

The district court explained that this sentence was designed to provide for the safety of the community and also to ensure a level of respect for the obligations Kelley has under the law. It further stated that Kelley:

> has demonstrated a complete incapacity to subject himself to the law. That failure, notwithstanding what I would consider to be fairly lenient treatment, not once but twice, and notwithstanding that, he has completely failed to comply. That suggests to me that either he won't ever comply in the future and that he has no intention of complying either because he disregards the law or he just has some inability.

The court also noted that it considered the policy statements in Chapter 7 of the U.S. Sentencing Guidelines in arriving at its sentence. The parties agree that USSG § 7B1.4 recommended a range of three to nine months imprisonment.

---

[1] By statute, the maximum term of imprisonment that can be imposed for violation of supervised release is two years when the underlying offense was a class C or D felony. 18 U.S.C. § 3583(e)(3). All revocation sentences relating to the same underlying felony must be aggregated in calculating this two-year statutory maximum. United States v. Swenson, 289 F.3d 676, 677 (10th Cir. 2002). Because Kelley served six months in prison after his first supervised release revocation, the maximum term he could receive upon his second supervised release revocation was 18 months.

**ANALYSIS**

We will reverse a sentence only if it was 1) imposed in violation of law, 2) imposed as a result of an incorrect application of the sentencing guidelines, 3) outside the applicable guideline range (and was not a permissible departure from the guideline range), or 4) imposed for an offense for which there is no applicable sentencing guideline and is "plainly unreasonable." 18 U.S.C. § 3742(e).

Because there is no applicable sentencing guideline for the sentence to be imposed after a violation of supervised release, our standard of review is "plainly unreasonable." United States v. White, 244 F.3d 1199, 1204 (10th Cir. 2001). "In reviewing the sentence and the court's explanation of it, we will not reverse if it can be determined from the record to have been reasoned and reasonable." Id. (quotation omitted). In conducting this analysis, we review the district court's findings of fact for clear error and its legal interpretations of the Sentencing Guidelines de novo. United States v. Burdex, 100 F.3d 882, 884 (10th Cir. 1996).

Under 18 U.S.C. § 3583(e)(3), when a person violates a condition of his or her supervised release, the district court may revoke the term of supervised release and impose prison time.[2] However, in doing so the district court is

_____

[2] The term of incarceration is limited to "all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision." 18 U.S.C. § 3583(e)(3). In addition, the term of incarceration may

(continued...)

required to consider the factors set forth in various subsections of 18 U.S.C. § 3553(a).[3]  Those factors include 1) the nature and circumstances of the offense, 2) the history and characteristics of the defendant, 3) the need for the sentence to afford adequate deterrence to criminal conduct, 4) the need to protect the public from further crimes of the defendant, 5) the need to provide the defendant with needed training, medical care, or correctional treatment, and 6) the sentencing range established under the sentencing guidelines or the policy statements applicable to a violation of supervised release.  See 18 U.S.C. § 3553(a).

In particular, when imposing a sentence for violating the conditions of supervised release, the district court must consider the policy statements in Chapter 7 of the Sentencing Guidelines.  See United States v. Lee, 957 F.2d 770, 774 (10th Cir. 1992) (citing 18 U.S.C. § 3553(a)).  Those policy statements recommend a range of imprisonment upon revocation of supervised release, and are "advisory rather than mandatory in nature."  See U.S. Sentencing Guidelines Manual § 7B1.4 (2002); Lee, 957 F.2d at 773; see also U.S. Sentencing Guidelines Manual § 7A(3)(a) ("[T]he Commission faced a choice between

---

[2](...continued)
not exceed five years in cases involving an underlying class A felony, three years with respect to class B felonies, two years for a class C or D felony, or one year in any other case.  Id.

[3]  The court may revoke a term of supervised release only "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7)."  See 18 U.S.C. § 3583(e).

promulgating guidelines or issuing advisory policy statements for the revocation of probation and supervised release.... [and] the Commission decided, for a variety of reasons, initially to issue policy statements.... [T]his approach provided greater flexibility both to the Commission and the courts."); Burdex, 100 F.3d at 885 ("[O]nly the statutory maximum imposed by Congress binds a sentencing court as to the length of a sentence imposed upon a violation of supervised release.").[4]

However, we have made it quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence. Id. at 886; Lee, 957 F.2d at 774-75. We do not require "a ritualistic incantation to establish consideration of a legal issue," nor do we demand that the district court "recite any magic words" to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider. See United States v. McClellan, 164 F.3d 308, 310 (6th Cir. 1999) (quotations omitted). Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence. Burdex, 100 F.3d at 886.

---

[4] We reaffirmed our holding in Lee that the Chapter 7 policy statements are merely advisory in United States v. Hurst, 78 F.3d 482 (10th Cir. 1996). In that case, we rejected the argument that Lee was inconsistent with the Supreme Court's subsequent decision in Stinson v. United States, 508 U.S. 36 (1993). See Hurst, 78 F.3d at 483-84.

In <u>Lee</u>, for example, we concluded that the sentencing court adequately considered the Chapter 7 policy statements because it noted that the Chapter 7 range is not mandatory, stated that the defendant breached the court's trust, and emphasized individual deterrence.  957 F.2d at 775.  Likewise, in <u>United States v. Brooks,</u> we held that the court below sufficiently considered the Chapter 7 sentencing range when it had been advised as to the applicable policy statement, observed that it was not binding, and stated its reasons for imposing the sentence it ultimately handed down.  976 F.2d 1358, 1360 (10th Cir. 1992).

We are satisfied that the district court considered all necessary factors in sentencing Kelley for violating the conditions of his supervised release.  The court expressly stated that it considered the Chapter 7 policy statements in arriving at its sentence.  Furthermore, it explained the other factors it took into account, including Kelley's inability to comply with the law, the need to ensure respect for the obligation to adhere to conditions of supervised release, and the safety of the community.  <u>Cf.</u> 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C).

Having determined that the district court properly considered the factors it was bound to review under 18 U.S.C. §§ 3583(e) and 3553(a), we have no

difficulty in determining that an 18-month sentence was reasoned and reasonable under the circumstances presented in this case.[5]

Finally, Kelley argues that the district court had a duty to consider the guideline range applicable to his underlying offense, conspiracy to defraud a financial institution. Kelley relies exclusively on the Ninth Circuit's decision in United States v. Olabanji, which held that a district court is required, after rejecting the range recommended by the policy statements, to consider the sentencing range that applied when the defendant was originally sentenced for the underlying offense. 268 F.3d 636, 638 (9th Cir. 2001). We conclude that Olabanji erroneously applied 18 U.S.C. § 3553 and we decline to adopt its reasoning.

Section 3553(a)(4) directs district courts to consider:

the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission....

Notwithstanding this statute's use of the disjunctive "or," the Ninth Circuit held that if the district court determines in step one not to adhere to the Chapter 7

    [5] In Lee, we approved a 24-month sentence for a second violation of supervised release when the Chapter 7 policy statement recommended three to nine months. 957 F.2d at 771-72. In Brooks, we approved a 24-month sentence upon revocation of supervised release when the Chapter 7 policy statement recommended six to 12 months. 976 F.2d at 1359. In Burdex, we approved a 24-month sentence for violating the conditions of supervised release when the Chapter 7 policy statement recommended eight to 14 months. 100 F.3d at 884.

recommendations, it must then in step two "revert for guidance to the sentencing guidelines' range for the underlying offense" pursuant to § 3553(a)(4)(A). See Olabanji, 268 F.3d at 638-39. We reject this rule.

To be sure, pursuant to 18 U.S.C. § 3553(a)(1), the seriousness of the defendant's underlying offense is one factor among many the district court should consider in sentencing upon revocation of supervised release, whether or not the district court elects to depart from the Chapter 7 recommended sentencing range. Yet as explained above, the district court need not address each factor listed in § 3553(a) individually. See Burdex, 100 F.3d at 886. Moreover, § 3553(a)(4)(A) has no application when a violation of the defendant's conditions of supervised release is at issue; in such cases the relevant consideration under § 3553(a)(4) is the Chapter 7 policy statements referenced in § 3553(a)(4)(B).

The natural reading of § 3553(a)(4) is further supported by that statute's legislative history. The Sentencing Commission proposed adding subsection (a)(4)(B) to clarify that revocation decisions should be guided by guidelines and policy statements issued by the commission specifically for that purpose, not by the guidelines that were applicable to the defendant's underlying offense. See 136 Cong. Rec. S. 14892, 14894-95 (1990). "Congress clearly intended that these guidelines or policy statements, rather than those applicable to initial sentencing, be used by courts when sanctioning probation (or supervised release) violators."

Id. at 14895; see also United States v. George, 184 F.3d 1119, 1121-22 (9th Cir. 1999); United States v. Schwegel, 126 F.3d 551, 554 (3d Cir. 1997).

The Olabanji court justified its contrary interpretation of § 3553(a)(4) by stating that it must be read in conjunction with 18 U.S.C. § 3553(b), which generally directs courts to "have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders" in the absence of an applicable sentencing guideline. Section 3553(b) advances one of the major purposes of the sentencing guidelines, avoiding unjustified disparities among similarly situated defendants. Cf. United States v. Stultz, 356 F.3d 261, 266 (2d Cir. 2004). Yet it provides no basis for importing the guidelines applicable to the underlying offense into sentencing decisions made upon revocation of supervised release. Supervised release violators are simply not in a position comparable to defendants facing initial sentencing for commission of the underlying crime. "[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S. Sentencing Guidelines Manual § 7A(3)(b) (2002).

In Lee, Brooks, and Burdex, we approved sentences above the Chapter 7 range without any indication that the district court considered the sentencing range that originally applied to the underlying offense. See Lee, 957 F.2d at 771;

Brooks, 976 F.2d at 1360 n.2; Burdex, 100 F.3d at 886. Likewise, the fact that the district court did not expressly mention the guideline range that applied to Kelley's conviction for conspiracy to defraud a financial institution does not call into question the 18-month sentence he received because he failed to comply with the terms of his supervised release. We AFFIRM.