FILED
United States Court of Appeals
Tenth Circuit

August 25, 2022

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EMILIO VALDEZ,

    Defendant - Appellant.

No. 22-1104
(D.C. No. 1:17-CR-00095-RBJ-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.[**]
_____

Emilio Valdez appeals from an order of the district court revoking his

supervised release and imposing upon him a sentence of six months'

imprisonment.[1]  Valdez asserts the district court failed to consider and resolve his

motions for a downward departure and a downward variance.  A review of the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

[1] Valdez's Unopposed Motion for an Expedited Ruling is hereby Granted.

transcript of the revocation hearing makes clear that the district court did, indeed, fully consider and reject Valdez's requests. Thus, exercising jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **affirms** the district court's judgment.

In 2017, Valdez pleaded guilty to a single count of willful failure to pay interstate child support in violation of 18 U.S.C. § 228(a)(3). His offense level of 10, combined with a criminal history category of III, established an advisory sentencing range of 10 to 16 months' imprisonment. The district court departed downward to a criminal history category of II, concluding Category III overstated Valdez's criminal history. The district court then varied downward from the newly applicable advisory sentencing range of 8 to 14 months' imprisonment and imposed a five-year term of probation.

In December 2021, while Valdez was on supervised release, the United States filed a "Petition for Summons on Person Under Supervision" in the district court. The United States alleged that Valdez committed eight violations of supervised release, the first five of which were for possession and use of a controlled substance. Valdez admitted those five violations and the government withdrew the remaining alleged violations.

Valdez filed a Motion for Downward Variance from the Guideline Range prior to the revocation hearing. His Motion recognized that pursuant to Chapter 7 of the Guidelines, his advisory sentencing range was 8 to 14 months' imprisonment. He requested, however, that the district court depart downward

2

from the applicable Category III criminal history category to a Category II as it did at the original sentencing proceeding. He also asked the district court to treat his violation as falling within Grade C, rather than Grade B, based on policy considerations. If only the first of these requested departures was granted, Valdez's advisory sentencing range would be 6 to 12 months' imprisonment. If both were granted, his advisory range would be 4 to 10 months' imprisonment. He then asked the district court to vary downward based on the sentencing factors set out in § 3553(a) and impose a term of probation.

At the beginning of the sentencing hearing, the district court noted it had read Valdez's motion, indicated it was unlikely to grant Valdez's request for probation, but stated it would consider Valdez's arguments. In response, Valdez's counsel acknowledged Valdez used cocaine and Ketamine, but noted those instances were spread over a four-year period. The district court responded as follows:

> Well, the fact is that the Court gave him a big break and trusted him. I gave him a departure to no time, probation. The probation office has spent a lot of time and a lot of money, and you come back in here asking me to give him another huge break, and I'm just not interested.

Valdez's counsel then asserted that Valdez's drug relapses were during periods of less intensive therapy and that a mandate for additional outpatient therapy could ameliorate the district court's concerns. The district court found this assertion unconvincing:

> The probation report, I'm quoting from page six. The probation office has worked extensively with the defendant attempting to guide him back into compliance, and has spent $8,446.56 on the defendant's dual diagnosis treatment throughout his time on probation. However, he has time and time again resorted to substance abuse. Now, that's what this probation officer has informed the Court.

Valdez's counsel again asserted therapy was the best way to deal with Valdez's lack of compliance with the conditions of his supervision. Counsel also asked the district court to utilize the same considerations it employed when it both departed and varied downward at the original sentencing. After hearing from both Valdez and a witness on his behalf, the district court heard from both the prosecutor and Valdez's probation officer. The prosecutor argued the record demonstrated Valdez was a "schemer" who utilized substantial resources while on supervision while making minimal progress. The prosecutor further argued that the record demonstrated Valdez had a history of successfully avoiding the consequences of his misdeeds and that a sentence of probation would only continue that unfortunate trend. Valdez's probation officer testified that Valdez's drug-usage problems were not therapy related but, instead, lifestyle issues. Thus, she did not favor further supervision or therapy. At the conclusion of the hearing, the district court ruled as follows:

> Well, I thought that I was done with child support cases when I left the state court. Little did I know that there is a federal statute about failing to pay child support, and Mr. Valdez was convicted of violating that statute in South Dakota. Our probation, and frankly the Court itself, had taken him on as an accommodation to the system in South Dakota.

When it came before the Court in 2018, he was facing a 10-year sentence. I don't really recall what the guidelines were. But in any event, I didn't put him in prison at all. I went along with [defense counsel's] request for a departure based on her statement his criminal history was overstated, put him on probation. And part of the reason was so that he could have a job and pay down that child support. It really wasn't that much. It was 50,000 something, but it was something that the mother should have had.

To my surprise, with the consent of the mother, apparently, he got out of paying most of that after he left here. Okay. But he also committed these offenses, and as has been said by probation, the person that really knows, he has violated time and time again. I kind of agree with [the prosecutor], frankly. I think we've done what we can in terms of giving him breaks and paying money to provide him with therapy. I also think it's important if a person is not a violent offender, that he be there for the birth of his child. I was there for the birth of all my children, and I look back at those experiences as some of the most amazing things that I've done in my life.

And I don't want Mr. Valdez to miss that. The Court is going to sentence him to six months in federal prison, order that he report on or about June 1st, 2022. There will be no further supervised release. The Court will not impose a fine. The Court warns Mr. Valdez that if he doesn't comply or report, when he's brought back here, he will get a much more substantial sentence. For today, he may leave. . . .

On appeal to this court, Valdez argues the district court erred in failing to rule on his requests for a downward variance and for a downward departure.[2] As

---

[2]Notably, Valdez did not object on this ground before the district court and, therefore, it appears the issue is not preserved. *See United States v. Romero*, 491 F.3d 1173, 1175-76 (10th Cir. 2007) (holding that challenges to the method the district court employed to calculate a sentence implicate procedural reasonableness); *id.* at 1176-78 (noting that unpreserved challenges to the procedural reasonableness of a sentence are reviewed for plain error). Because the government did not raise the preservation issue, and because the resolution of the merits of Valdez's appeal is so clear, this court exercises its discretion to resolve this case on the merits.

the recitation set out above shows, Valdez's argument in this regard is utterly inconsistent with the transcript of the revocation hearing.  The district court specifically indicated it had reviewed both Valdez's motion and the attachments thereto.  It demonstrated its clear understanding of the import of Valdez's arguments throughout the hearing.  Ultimately, based on case- and defendant-specific factors, the district court refused to grant Valdez the exaggerated leniency he requested.  The district court, nevertheless, varied downward two months from the bottom of the applicable Chapter Seven advisory range and imposed a sentence of six months' imprisonment.  The district court was not obligated to engage in some type of "ritualistic incantation" or "recite any magic words" in rejecting Valdez's request for leniency.  *See United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) (quotation omitted).

The judgment of the United States District Court for the District of Colorado is hereby **AFFIRMED**.

Entered for the Court

Michael R. Murphy
Circuit Judge

6