**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**December 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

VICENTE VILLELA,

    Defendant - Appellant.

Nos. 23-2145 and 23-2146
(D.C. No. 1:19-CR-02114-KWR-1)
(D.C. No. 1:21-CR-01575-KWR-1)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **BALDOCK**, and **McHUGH**, Circuit Judges.
_____

In 2023, Defendant-Appellant Vicente Villela was serving two concurrent

terms of supervised release.  He violated his conditions of supervision on four

separate occasions.  After the fourth violation, the district court revoked both of

Mr. Villela's supervised-release terms and sentenced him to two consecutive,

eighteen-month terms of imprisonment, an upward variance.  Mr. Villela now appeals

the revocation sentences the district court imposed.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

Mr. Villela presents three challenges in this consolidated appeal. First, he argues that the district court's mention of the need for "promotion of respect for the law" under 18 U.S.C. § 3553(a)(2)(A) in its sentencing remarks renders his sentences reversible on plain-error review. Second, Mr. Villela contends that the district court abused its discretion by failing to adequately explain his sentences. Third, he argues that the district court abused its discretion by failing to provide him with proper notice of the sentences.

We reject each of Mr. Villela's challenges. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's sentencing judgment.

**I**

**A**

Mr. Villela was initially arrested on December 10, 2017, pursuant to an arrest warrant related to his involvement in transporting illegal aliens from El Paso, Texas to Phoenix, Arizona. In July 2018, Mr. Villela pleaded guilty to a felony charge of conspiracy to transport illegal aliens in the District of New Mexico, Case No. 18-cr-814. The district court sentenced him to time served plus three years of supervised release.

Mr. Villela began his first term of supervised release on July 23, 2018. He absconded from supervision less than a month later. He also missed multiple substance-abuse counseling sessions, urinalysis tests, and breathalyzer tests. An arrest warrant was subsequently issued for Mr. Villela, and he was taken into custody on February 7, 2019. On March 14, 2019, the district court revoked his supervised-

release term and sentenced him to time served plus thirty-four months of supervised release.

On April 12, 2019, less than one month into Mr. Villela's new term of supervised release, staff at the halfway house where Mr. Villela was residing told law enforcement that they had conducted a search of his cellphone and found images of him "possessing and firing guns, drinking alcohol, and smoking marijuana." Aplee.'s Suppl. App., Vol. II, at 9–10 (Presentence Investigation Rep. in 21-cr-1575). Ten days later, law enforcement conducted a search of Mr. Villela's cellphone and found multiple images and videos of him possessing three different firearms. As a result, Mr. Villela was charged as a felon in unlawful possession of a firearm under 18 U.S.C. § 922(g)(1) in Case No. 19-cr-2114 [hereinafter *Villela I*[1]].

Mr. Villela pleaded guilty to this offense, and on October 31, 2019, the district court sentenced him to fifteen months of imprisonment plus three years of supervised release. Mr. Villela also admitted to violating the terms of his supervised release, and he was sentenced to an additional month in prison, to be served consecutive to his sentence in *Villela I*.

Mr. Villela commenced his third term of supervised release on June 1, 2020. On November 13, 2020, he was charged with larceny in Bernanillo County Metropolitan Court. He also violated a location-monitoring requirement of his supervised release. As a result, the U.S. Probation Office filed a petition to revoke

---

[1]    *Villela I* corresponds to Case No. 23-2145 in this consolidated appeal.

Mr. Villela's supervision. The U.S. Probation Office amended its petition to revoke to allege that Mr. Villela had committed two additional violations of his supervised-release conditions in January 2021: first, by testing positive for cocaine use and, second, by failing on another occasion to agree to urine drug testing. The district court held a revocation hearing to address Mr. Villela's alleged violations and, on June 1, 2021, entered an order revoking Mr. Villela's supervision and sentencing him to eight months of imprisonment followed by twelve months of supervised release.

In February 2021, while events related to his third supervised-release term were taking place, a New Mexico State Police officer stopped a pickup truck that Mr. Villela was driving. As the officer approached the vehicle, Mr. Villela switched seats with a female passenger. When the officer sought to verify Mr. Villela's name, he fled. During an inventory search of the vehicle, officers found a loaded Glock 17 pistol in the back seat. Further investigation revealed online photos from December 2020 in which Mr. Villela could be seen in possession the same Glock 17 pistol. Mr. Villela was subsequently arrested on March 17, 2021.

Based on his possession of the Glock 17 pistol, in October 2021, Mr. Villela was indicted in the District of New Mexico for felon in unlawful possession of a firearm and ammunition under 18 U.S.C. §§ 922(g)(1) and 924 in 21-cr-1575 [hereinafter *Villela II*[2]]. Mr. Villela pleaded guilty, and on August 3, 2022, the district court sentenced him to fifteen months of imprisonment, to run concurrently

---

[2]    *Villela II* corresponds to Case No. 23-2146 in this consolidated appeal.

with the revocation sentence imposed in *Villela I*, followed by three years of supervised release.

Mr. Villela began his fourth term of supervised release on December 5, 2022. On January 31, 2023, Mr. Villela failed to attend a monthly random urinalysis test and was unresponsive when probation officers tried to reach him by phone or text. Then, in early February 2023, a probation officer was unable to contact Mr. Villela by text or during an unannounced home visit. The probation officer repeatedly advised Mr. Villela to report to the Probation Office. A few days later, Mr. Villela texted the following message to the officer: "I don't want to be on probation so we can just do this[,] and I'll ask the Judge to just give me time," and "[w]ell have the Marshals come get me." Aplee.'s Suppl. App., Vol. II, at 24 (Violation Rep. in 19-cr-2114, 21-cr-1575, filed Feb. 14, 2023). Mr. Villela later texted to apologize and stated he would report to the Probation Office later that day; however, he once again failed to do so.

On February 14, 2023, the Probation Office filed petitions to revoke Mr. Villela's supervised release in both *Villela I* and *Villela II* for failure to report to the Probation Office three times and for failure to attend a urinalysis test. Mr. Villela surrendered to authorities on April 19, 2023.

**B**

In *Villela I*, based on a grade level of C and a criminal history category of III, Mr. Villela's U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of imprisonment was five to eleven months. *Id*. at 25 (citing U.S.S.G. § 7B1.4(a)). In

5

*Villela II*, based on a grade level of C and a criminal history category of IV, Mr. Villela's Guidelines range was six to twelve months' imprisonment. *Id.* (citing U.S.S.G. § 7B1.4(a)). The maximum penalty for revocation was two years' imprisonment and three years of supervised release. *Id.* (citing 18 U.S.C. § 3583(e)(3)); *see also* 18 U.S.C. § 3583(b)(2).

Mr. Villela filed identical sentencing memoranda in *Villela I* and *Villela II*, asking for concurrent sentences of six months of imprisonment in each case to be followed by twelve months of supervised release. The government asked for sentences at the high end of the Guidelines range in each case, with some amount of time run consecutively.

The district court held a status conference for both cases on September 5, 2023. Mr. Villela admitted at the hearing to the factual bases for the alleged violations in both *Villela I* and *Villela II* and apologized for his conduct. However, he asked the district court to hold the revocation petitions in abeyance and further requested that he be allowed to enter the District of New Mexico's Reentry Through Integrated Opportunities ("RIO") program.

The district court rejected Mr. Villela's requests. Instead, it proceeded to sentencing. The court told Mr. Villela's counsel that if she "would like to go to sentencing today, [it would] give [her] more time," and inquired of counsel, "would you like for him to speak or . . . [would] you like to speak before he speaks." Aplt.'s App. at 73 (Status Conf./Sent'g Tr., dated Sept. 5, 2023). In response, Mr. Villela's counsel did not object to the shift to sentencing.

6

In its sentencing remarks, the district court stated that it had "seen and considered all of the factors under 18 U.S.C. [§] 3553(a)(1)-(7)." *Id.* at 78. The district court highlighted Mr. Villela's repeated refusals to accept responsibility for his actions. The district court then explained:

> I have an obligation, under the factors that we have talked about, *to make sure that there is a promotion of respect for the law*, that there is deterrence, that there is safety for the community, and that goes along with considering your history and characteristics, which I have looked at.

*Id.* at 78–79 (emphasis added). The district court later repeated that it had "reviewed . . . the factors set forth in 18 U.S.C. [§] 3553(a)(1)-(7)." *Id.* at 80.

Addressing Mr. Villela directly, the district court discussed his repeated violations of the terms of his supervised release, including absconding from supervision for sixty-eight days, failing to attend a urinalysis test, and not complying with the terms that the district court imposed on him. The district court ultimately revoked Mr. Villela's supervised release in both *Villela I* and *Villela II* and sentenced him to consecutive, eighteen-month terms of imprisonment in each case. Both revocation sentences varied upwards from the Guidelines, which the district court noted were "advisory." *Id.* at 81.

After the district court pronounced its sentences, Mr. Villela objected to the district court's "failure to articulate each one of the [§ 3553(a)] factors" and the lack of "noti[ce] to the defense that the [district court] was going to vary upward." *Id.* at 84. In response, the district court stated that it was "not going to argue with [its own] reasoning . . . after considering all of the factors" and that it did not believe it

had "an obligation . . . to notify [Mr. Villela] if [it was] going to vary upward in a probation violation." *Id*.

## II

Mr. Villela timely filed his notice of appeal and raises three challenges. First, he argues that the district court "committed plain error when it impermissibly relied upon [§] 3553(a)(2)(A) as a sentencing factor." Aplt.'s Opening Br. at 7. Second, he contends that the district court "abused its discretion when it sentenced Mr. Villela above the [S]entencing [G]uidelines without explanation." *Id*. at 12. Third, he argues that the district court "abused its discretion when it failed to provide Mr. Villela with notice of the possibility of an upward variance based on a factor that would come as a prejudicial surprise to defense counsel." *Id*. at 14.

We address each argument in turn. Finding them unconvincing, we affirm the district court's sentencing judgment.

## A

We begin with Mr. Villela's argument that the district court's sentencing remarks—which referenced § 3553(a)(2)(A)—render his sentences reversible. Mr. Villela acknowledges that he did not object to the district court's reference to § 3553(a)(2)(A) at sentencing, and he therefore requests plain-error review. Mr. Villela is correct that plain-error review applies to this challenge. *See United States v. McGehee*, 672 F.3d 860, 873 (10th Cir. 2012) ("[W]here a defendant has forfeited an issue in the district court, in order to prevail [on appeal], a defendant must make a sufficient showing of error under the plain-error standard."). !

8

"A party seeking relief under the plain-error rubric bears the burden of showing '(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights.'" *United States v. Finnesy*, 953 F.3d 675, 684 (10th Cir. 2020) (quoting *McGehee*, 672 F.3d at 876). "If these factors are met, [this court] may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (alteration in original) (quoting *United States v. Cordery*, 656 F.3d 1103, 1105 (10th Cir. 2011)).

"An error is 'plain' if it is 'so clear or obvious that it could not be subject to any reasonable dispute.'" *United States v. Starks*, 34 F.4th 1142, 1157 (10th Cir. 2022) (quoting *United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016)). For an error to be clear or obvious, the error must be contrary to well-settled law, which generally requires that "either the Supreme Court or this court must have addressed the issue." *Id*. (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)).

At prong three of plain-error review, a defendant has the burden to demonstrate that the error affected his substantial rights. *See, e.g*., *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005). To make this showing, "a defendant generally must demonstrate that an error was 'prejudicial, meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1138 (10th Cir. 2017) (en banc) (quoting *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008)).

9

"The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Id*. (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).  Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir. 2008) (quoting *Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002)).

**1**

"A district court may revoke a term of supervised release and impose a term of imprisonment 'when a person violates a condition of his or her supervised release.'" *United States v. Booker*, 63 F.4th 1254, 1258 (10th Cir. 2023) (quoting *United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004)). "'However, in doing so the district court is required to consider' *a subset* of the § 3553(a) sentencing factors incorporated by reference into the statute governing the modification and revocation of supervised release." *Id*. (emphasis added) (quoting *Kelley*, 359 F.3d at 1304). "Section 3583(e) provides that a district court 'may' terminate, modify, or revoke a term of supervised release 'after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).'" *Id*. (quoting 18 U.S.C. § 3583(e)).

"Notably absent from this list is § 3553(a)(2)(A)," *id*., which reads:

> (2) the need for the sentence imposed—

10

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]

18 U.S.C. § 3553(a)(2)(A).  "Section 3553(a)(2)(A) represents 'retribution,' one of the 'four purposes of sentencing' that courts must consider when fashioning a sentence during the initial sentencing process."  *Booker*, 63 F.4th at 1258 (quoting *Tapia v. United States*, 564 U.S. 319, 325 (2011)).  Because § 3553(a)(2)(A) is not included in the list of sentencing factors that courts may consider under § 3583(e), a district court "necessarily err[s]" if it considers the need for a revocation sentence to "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense."  *See Booker*, 63 F.4th at 1260–62.[3]

In *Booker*, we held that the district court erred at prong one of plain-error review by referencing the need to "promote respect for the law[] and provide just punishment for the offense" during a revocation sentencing, but we ultimately concluded that the error did not affect the defendant's substantial rights at prong

---

[3]    During the pendency of this appeal, the Supreme Court granted a petition for writ of certiorari in *Esteras v. United States*, No. 23-7483, which presents the following question:

> Even though Congress excluded section 3553(a)(2)(A) from section 3583(e)'s list of factors to consider when revoking supervised release, may a district court rely on the section 3553(a)(2)(A) factors when revoking supervised release?

*Esteras v. United States*, No. 23-7483, --- U.S. ---- (cert. granted Oct. 21, 2024).  It is therefore possible that the Supreme Court's forthcoming decision in *Esteras* will affect the viability of *Booker*.  However, *Booker* remains good law at the time of our issuance of this order and judgment, so we rely on *Booker* without reservation.

three.  *See* 63 F.4th at 1260–64 (emphasis omitted).  We reasoned that "a formulaic recitation of [a] statutorily enumerated sentencing factor[] supplies little indication that a court lengthened a sentence for [retributive] purposes," and we found this reasoning especially pertinent because the district court indicated that it was aware that not all § 3553(a) factors were applicable in the revocation sentencing context. *Id*. at 1262 (alterations in original) (quoting *United States v. Collins*, 461 F. App'x 807, 810 (10th Cir. 2012)).  We also cited *United States v. Penn*, 601 F.3d 1007, 1012 (10th Cir. 2010) to explain that "a single reference to punishment [does] not affect [a] defendant's substantial rights" and that when a district court does not rely on the need for punishment while setting forth its initial justifications for a new revocation sentence, "we [see] 'no reason to conclude [the defendant's] sentence would have been different.'"  *Booker,* 63 F.4th at 1263 (fourth alteration in original) (quoting *Penn*, 601 F.3d at 1012).

### 2

Mr. Villela's first challenge does not prevail under our "demanding" plain-error standard.  *McGehee*, 672 F.3d at 876.  Although, for purposes of our analysis, we conclude that Mr. Villela has established that all of the district court's challenged sentencing remarks were erroneous at prong one and that the errors were clear or obvious at prong two, he has not demonstrated that the remarks affected his substantial rights at prong three.  Failure to show prejudice at prong three is fatal to Mr. Villela's challenge.  *See, e.g.*, *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) ("We will not reverse a conviction for plain error unless all

12

four prongs of the plain-error test are satisfied." (quoting *United States v. Caraway*, 534 F.3d 1290, 1299 (10th Cir. 2008))). We discuss these three prongs in turn.

**a**

At prong one, Mr. Villela argues that the following three statements made by the district court at sentencing impermissibly implicated the § 3553(a)(2)(A) factor:

- "I have an obligation, under the factors that we have talked about, to make sure that there is a promotion of respect for the law . . . ." Aplt.'s App. at 78–79.
- "[I] have seen and considered all of the factors under 18 U.S.C. [§] 3553(a)(1)-(7)." *Id*. at 78.
- "The Court has reviewed . . . the factors set forth in 18 U.S.C. [§] 3553(a)(1)-(7) . . . ." *Id*. at 80.

The government concedes that the first of these statements constituted an error at prong one. But the government argues that the latter two statements amounted to "general references to the factors" listed in § 3553(a) and thus were not erroneous at prong one. Aplee.'s Resp. Br. at 15. We review each of the challenged statements under our plain-error standard. *See United States v. Ibarra-Diaz*, 805 F.3d 908, 919 (10th Cir. 2015) (reviewing "each of [ ] nine statements for plain error").

As noted, the parties both agree that the district court's first statement constituted an error at prong one under *Booker* because the court explicitly referenced § 3553(a)(2)(A) and its need to take into account "promotion of respect for the law" in fashioning Mr. Villela's revocation sentences. Notwithstanding the government's contention that the remaining two, more general statements do not

13

evince *Booker* error, we assume (without deciding) that they do for purposes of our

analysis here.  We do so because there is at least a colorable basis for Mr. Villela's

position that these two statements also are erroneous under *Booker*,[4] and the

government would not be prejudiced by our treatment of these statements as

erroneous in light of our ultimate ruling against Mr. Villela at prong three of plain-

error review.  Accordingly, Mr. Villela has met his burden to establish that the

---

[4]    A court's general consideration of "the factors under [§] 3553(a)(1)-(7)" seemingly would necessitate a prohibited consideration of § 3553(a)(2)(A).  Aplt.'s App. at 78.  Thus, when the district court mentioned that it had "considered," *id.*, or "reviewed," *id.* at 80, the § 3553(a) factors altogether, one could reasonably argue that the court "necessarily erred," *Booker*, 63 F.4th at 1261, by considering the impermissible § 3553(a)(2)(A) factor.

Our decision in *Booker* does not definitively resolve the question of whether a district court's general reference to the factors in § 3553(a)(1)–(7), when explaining a revocation sentence, constitutes error.  We did state in *Booker* that "a district court may not consider the need for a revocation sentence to (1) reflect the seriousness of the offense, (2) promote respect for the law, and (3) provide just punishment for the offense." *Id.* (internal quotation marks and citation omitted).  This excerpt at least implies that *any* consideration of § 3553(a)(2)(A) during sentencing is an error. Thus, *Booker* suggests that a general reference to the factors in § 3553(a)(1)–(7) is an error because consideration of all of these factors would necessarily include consideration of § 3553(a)(2)(A).

Moreover, in rejecting a contention similar to Mr. Villela's—that a revocation-sentencing court's "reference to 'all the factors set forth' meant that it considered every § 3553(a) factor, including § 3553(a)(2)(A)"—*Booker* relied at least in part on the fact that the district court expressly "understood that not all § 3553(a) factors were applicable because it indicated that it was referring to the factors" that were relevant in the revocation context under § 3583(e).  *Id.* at 1262 n.4.  There is no such express acknowledgement by the district court here—*viz.*, an acknowledgement that only a limited subset of § 3553(a)'s sentencing factors is applicable in the revocation context.  All that said, we need not resolve this open issue here; accordingly, we refrain from doing so.

district court erred at prong one of the plain-error rubric, and all three statements proceed to prong two.

**b**

At prong two, Mr. Villela must establish that the errors were clear or obvious, which generally requires a showing that the errors were contrary to Supreme Court or Tenth Circuit precedent. *See Starks*, 34 F.4th at 1157. As discussed in the previous section, the three challenged statements are all deemed, for purposes of this analysis, to be instances of error under our precedent in *Booker* because they show that the district court impermissibly considered, to at least an appreciable extent, the § 3553(a)(2)(A) factor when explaining Mr. Villela's revocation sentences. *See Booker*, 63 F.4th at 1261–62. Therefore, all three statements constitute clear or obvious error, and Mr. Villela has met his burden to establish prong two of the plain-error rubric. All three statements proceed to prong three.

**c**

At prong three, Mr. Villela must establish that the district court's erroneous statements affected his substantial rights. *See Gonzalez-Huerta*, 403 F.3d at 733. Mr. Villela argues that "there is at least a reasonable probability that [he] would have received a lesser sentence absent the error." Aplt.'s Opening Br. at 9. In support, he contends that "retributive considerations figured prominently in the district court's sentencing decision," and the district court's statements during sentencing are distinguishable from those in *Booker* and *Penn*. *Id*. at 9–11. The government counters that Mr. Villela has failed to establish a reasonable probability that his

15

sentences would have been less severe but for the court's error—reasoning that the district court's comments during sentencing "demonstrate that the sentence it imposed was based on [Mr.] Villela's repeated violations of his release conditions, his defiant attitude towards his probation officer, and his refusal to take responsibility for his actions." Aplee.'s Resp. Br. at 16.

We generally agree with the government's reasoning as to prong three. Mr. Villela has not shown a reasonable probability that, but for the district court's erroneous remarks, the outcome of his revocation sentencing would have been different. *See Bustamante-Conchas*, 850 F.3d at 1138. This is so for two reasons.

First, apart from the district court's few skeletal references to § 3553(a)(2)(A), the district court's sentencing remarks were proper: they were firmly rooted in permissible statutory sentencing factors and animated, in substance, by the Guidelines' focus on sanctioning breaches of trust. In our view, these few references to § 3553(a)(2)(A) do not raise a "probability sufficient to undermine confidence in the outcome" of Mr. Villela's sentencing. *See Hasan*, 526 F.3d at 665.

The district court clearly explained its reasoning to Mr. Villela at sentencing:

> *There's always an excuse for your behavior, and it's never your fault*, and that's a great concern and weighs heavily against you in this matter. You obviously have done what you want, when you want. You have tried to make the system conform to you, and it has somewhat up to this point. You seem to think there are no consequences, and when you make a decision in either violating the law again or violating the conditions of release, it's not your fault.
>
> And whether or not you are sincere today in your desire to do [the RIO] program, there are consequences, and I have great

16

concern, based on your history -- even your recent history -- that you are going to consider the requirements of probation and the Court very little in making your decisions every day.

* * *

I understand you have young ones . . . [but they] have not slowed you down in violating the requirements of the Court and probation; not a lick, ha[ve] not slowed you down one bit. . . . The Court finds that you violated your conditions of supervision by failing to report to your supervising probation officer as instructed on February 7th, 2023; February 9th and February 10th, leading you to abscond from your term of supervised release for 68 days and additionally failing to attend your random monthly scheduled urinalysis on January 31st, 2023.

* * *

[Y]ou have displayed *a lack of commitment to your rehabilitation*. You continue to abscond and disregard the conditions imposed by the Court, probation, and a history of those with law enforcement, that you absconded from supervision and your whereabouts were unknown for approximately 68 days. You voiced on multiple occasions your intent of not having any desire to comply with your term of supervised release, and [you] stated that you do not want to be on supervised release. Although you were provided the opportunity to reside with your family, to remain employed and to attend treatment, you have demonstrated that you are not amenable for supervision at this time.

Aplt.'s App. at 78–81 (emphasis added). We agree with the government that the court's sentencing comments "demonstrate that the sentence it imposed was based on [Mr.] Villela's repeated violations of his release conditions, his defiant attitude towards his probation officer, and his refusal to take responsibility for his actions." Aplee.'s Resp. Br. at 16.

More to the point, the district court's comments were firmly rooted in permissible statutory sentencing factors—not § 3553(a)(2)(A). Specifically, they reveal the court's consideration of "the nature and circumstances of the offense and

the history and characteristics of the defendant," § 3553(a)(1), "the need for the sentence imposed--to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), and "the need for the sentence imposed--to protect the public from further crimes of the defendant," § 3553(a)(2)(C).  *See Booker*, 63 F.4th at 1261 ("[T]he district court properly considered whether a term of imprisonment would deter Mr. Booker and others from engaging in violative conduct, the need to protect the public, the nature of Mr. Booker's post-release conduct, and the number of violations.").  For example, the district court expressly stated that it "ha[d] great concern[] based on [Mr. Villela's] *history* -- even [his] recent *history* -- that [he was] going to consider the requirements of probation and the Court very little in making [his] decisions every day."  Aplt.'s App. at 78 (emphasis added).  And the district court emphasized Mr. Villela's "lack of commitment to [his] rehabilitation and how he "continue[d] to abscond and disregard the conditions imposed by the Court."  *Id*. at 80.  These comments demonstrate the district court's reliance on the permissible statutory sentencing factors.  Even Mr. Villela acknowledges that the district court's sentencing remarks can be interpreted as addressing such permissible matters.  *See* Aplt.'s Reply Br. at 7 ("Mr. Villela does not disagree that the district court's comments can be interpreted in this way.").

Further, though the district court did not say so verbatim, it is readily apparent that its focus was not on retribution but, rather, on properly responding to Mr. Villela's repeated breaches of the court's trust—a sentencing approach that the Guidelines contemplate and endorse.  *See, e.g.*, U.S.S.G. Ch. 7, Pt. A, intro. cmt.

18

("[A]t revocation the court should sanction primarily the defendant's breach of trust."); *Booker*, 63 F.4th at 1261 (noting that "the bulk of the sentencing colloquy was focused on permissible considerations," which were "relevant to determining (1) the extent to which Mr. Booker breached the trust of the district court, and (2) the likelihood that Mr. Booker would successfully abide by any future supervised release conditions." (citation omitted)); *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) ("The violation of a condition of supervised release is a breach of trust.").

In many respects, the district court's sentencing remarks are analogous to those made by the district court in *Booker*, where we held that, "apart from the single reference to § 3553(a)(2)(A)," the district court's sentencing remarks "were proper and . . . focused on the sorts of considerations we expect courts to weigh when deciding whether to revoke supervised release." 63 F.4th at 1263. For example, the district court in *Booker* discussed "the nature and circumstances of the numerous violations and the violation conduct and the history and characteristics of [the defendant]," that the defendant "ha[d] shown repeated disregard for rules and condition[s] of his supervised release," that the defendant had "continued to commit new law violations," and finally that the defendant "ha[d] on multiple occasions failed to report to his law enforcement contact as required by the conditions of his supervision." *Id*. at 1258. The court ultimately concluded that "a statutory-maximum sentence was necessary given Mr. Booker's numerous supervised release violations and the fact that he clearly needed help to comply with the law in the

19

future." *Id*. at 1263. Here, as in *Booker*, the overall "tenor," *id*., of the district court's sentencing remarks reflects that it was not focused on the impermissible retributive concerns of § 3553(a)(2)(A) but, rather, on the concerns embodied in the statutory sentencing factors that § 3583(e) deemed permissible, and, relatedly, on Mr. Villela's repeated breaches of the court's trust. As such, we reject Mr. Villela assertion that "retributive considerations figured prominently in the district court's sentencing decision." Aplt.'s Opening Br. at 10.

The second reason that Mr. Villela has not shown a reasonable probability that the district court's error affected the outcome of his revocation sentencing is that the error amounted to "a formulaic recitation of [a] statutorily enumerated sentencing factor[]" and thus "'supplies little indication that [the district court] lengthened [Mr. Villela's] sentence for [retributive] purposes.'" *Booker*, 63 F.4th at 1262 (first, second and fifth alterations in original) (quoting *Collins*, 461 F. App'x at 810). The district court stated during sentencing that it had an "obligation" to ensure there was "promotion of respect for the law, that there is deterrence, that there is safety for the community, and that goes along with considering [Mr. Villela's] history and characteristics." Aplt.'s App. at 78–79. This list of "obligations" paraphrases §§ 3553(a)(2)(A), (a)(2)(B), (a)(2)(C), and (a)(1), respectively. Hence, it appears the district court simply provided a formulaic, offhand recitation of the various sentencing factors without placing special emphasis on any one factor, including the § 3553(a)(2)(A) factor. *See Booker*, 63 F.4th at 1263 (noting that "the district court . . . did not emphasize its reliance on an impermissible factor").

20

Similarly, when the district court remarked that it had "seen and considered all of the factors under [§] 3553(a)(1)-(7)" and that it had "reviewed" these factors, it did not place special emphasis on the § 3553(a)(2)(A) factor. Aplt.'s App. at 78, 80. Instead, the district court simply offered a collective statement of the sentencing factors in perfunctory fashion. *See Booker*, 63 F.4th at 1263. Although the district court erroneously included § 3553(a)(2)(A) in that grouping, there is no indication that the court placed material weight on this factor in its sentencing determination. Mr. Villela has not demonstrated that there is a reasonable probability that the result of his sentencing proceeding would have been different absent the court's (collective) reference to § 3553(a)(2)(A).

We recognize that certain aspects of the sentencing remarks at issue make this case a closer call than both *Booker* and *Penn*—the case upon which *Booker* relied. Unlike *Booker*, the district court here did not explicitly acknowledge that it was "aware that not all § 3553(a) factors were applicable in the revocation sentencing context." 63 F.4th at 1262. And, unlike in *Penn*, the district court here referenced § 3553(a)(2)(A) as part of its sentencing remarks; whereas the *Penn* court raised an impermissible factor "after defense counsel objected to his client receiving a high-end sentence." *Id*. at 1263 (citing *Penn*, 601 F.3d at 1012). Finally, unlike both *Booker* and *Penn*, for purposes of our analysis, we assume that the district court made multiple impermissible statements that implicated the § 3553(a)(2)(A) factor.

Nonetheless, the district court's sentencing remarks are naturally and reasonably interpreted, in substance, as relying on permissible statutory factors that

21

take into account Mr. Villela's apparent inability to adhere to the terms of his supervised release and his related failure to take seriously the processes put in place to aid his rehabilitation. Relatedly, the court's remarks were animated by the proper aim of sanctioning Mr. Villela's repeated breaches of the court's trust. The court's skeletal references to the impermissible retributive factor, § 3553(a)(2)(A), were formulaic and of no appreciable significance.

In sum, Mr. Villela does not convince us that there is a reasonable probability that the district court would have sentenced him to lesser sentences absent its erroneous references to § 3553(a)(2)(A). Because Mr. Villela has not shown that the district court's erroneous sentencing remarks affected his substantial rights, we conclude that his first challenge fails at prong three of plain-error review. *See Gonzalez-Huerta*, 403 F.3d at 733.

**B**

Next, we consider Mr. Villela's challenge to the district court's explanation of the sentences. Mr. Villela argues that the district court "abused its discretion when it sentenced [him] above the sentencing guidelines without explanation." Aplt.'s Opening Br. at 12. This is a procedural challenge, *see United States v. Eddington*, 65 F.4th 1231, 1237 (10th Cir. 2023) ("Procedural errors include . . . 'failing to adequately explain the chosen sentence.'" (quoting *United States v. Sanchez-Leon*, 764 F.3d 1248, 1261 (10th Cir. 2014))), and Mr. Villela correctly alludes to the applicable standard of review—abuse of discretion, *see id.* ("When a defendant has preserved his procedural challenge in district court, 'we generally review the

22

procedural reasonableness of that defendant's sentence using the familiar abuse-of-discretion standard of review.'" (quoting *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1262 (10th Cir. 2018))).  Therefore, "we review de novo the district court's legal conclusions regarding the [G]uidelines and review its factual findings for clear error."  *Sanchez-Leon*, 764 F.3d at 1262 (alteration in original) (quoting *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012)).

## 1

To adequately explain a chosen sentence, the district court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision[-]making authority." *Sanchez-Leon*, 764 F.3d at 1262 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).  If the court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Gall v. United States*, 552 U.S. 38, 50 (2007).  "[A] major departure should be supported by a more significant justification than a minor one."  *Id*.

## 2

Mr. Villela argues that the district court "did not explain why sentencing Mr. Villela to six and seven months above the . . . Guidelines . . . was 'sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [§ 3553(a)].'"  Aplt.'s Opening Br. at 13 (quoting 18 U.S.C. § 3553(a)).  He also contends that the district court "did not specifically address why it exceeded the top

end of the [G]uideline[s] range for each sentence." *Id*. at 14.  The government responds that the district court's explanation "was more than adequate to justify the upward-variant sentences it imposed."  Aplee.'s Resp. Br. at 22.

We conclude that the district court did not abuse its discretion.  The court explained Mr. Villela's sentences by focusing on his history, personal characteristics, and the repeated nature of his violations.  First, it summarized its view of Mr. Villela's personal behavior, explaining that he consistently made excuses for his actions, tried to make the system conform to him, and thought that "there [we]re no consequences" whenever he violated the law.  Aplt.'s App. at 78.  Then, the district court told Mr. Villela that it had "great concern, based on [his] history -- even [his] recent history -- that [he was] going to consider the requirements of probation and the Court very little in making [his] decisions every day."  *Id*.  After running through each of Mr. Villela's repeated violations, the court emphasized his "lack of commitment to [his] rehabilitation," that he "continue[d] to abscond and disregard the conditions imposed by the Court," and that he had "voiced on multiple occasions [his] intention of not having any desire to comply with [his] term of supervised release."  *Id*. at 79–81.  These remarks show that the district court took into account permissible statutory sentencing factors in the revocation context—e.g., § 3553(a)(1), (a)(2)(B), and (a)(2)(C)—as well as Mr. Villela's repeated breaches of the court's trust.

Though the district court did not clarify which statutory factors it was analyzing for each of its remarks, it was not required to do so; it properly provided "a

reasoned basis" for the sentences by focusing on Mr. Villela's history of violations and his personal attitude. *See Sanchez-Leon*, 764 F.3d at 1262. And the court's targeted discussion of Mr. Villela's unwillingness to accept responsibility for his actions offered a "compelling" justification sufficient "to support the degree of the variance." *See Gall*, 552 U.S. at 50. Finally, because the district court's sentencing remarks reflected a straightforward analysis of the material facts in Mr. Villela's case, a more detailed explanation was not necessary. *See id*. at 53 ("[The court] allowed both parties to present arguments . . . , considered all of the § 3553(a) factors, and thoroughly documented [its] reasoning."); *Rita*, 551 U.S. at 359 ("Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.").

Accordingly, the district court did not abuse its discretion in the explanation it provided for Mr. Villela's sentences.

## C

Lastly, we address Mr. Villela's notice argument. He contends that the district court "abused its discretion when it failed to provide [him] with notice of the possibility of an upward variance based on a factor that would come as a prejudicial surprise to defense counsel." Aplt.'s Opening Br. at 14. Mr. Villela does not contend that the district court was required to provide advance notice of the upward variance. *See* Aplt.'s Reply Br. at 12. Instead, he raises three granular notice-related arguments: (1) "the sentencing occurred during a status conference in which defense

25

counsel requested that the court consider holding the [g]overnment's revocation motion in abeyance," (2) "the [g]overnment had not requested any upward variance in its sentencing memorandum," and (3) the district court "based its sentencing decision in part on [§] 3553(a)(2)(A)."  Aplt.'s Opening Br. at 16–17.

Yet, at sentencing, Mr. Villela raised only a general objection—stating, "with regard to notification to the defense that the [district court] was going to vary upward, there was no notice to the defense as to that."  Aplt.'s App. at 84.  This general objection is significantly different than the granular arguments that he advances now on appeal.  However, the government does not contend that Mr. Villela failed to preserve his appellant arguments; accordingly, we are content to assume without deciding that he has done so.  *See, e.g.*, *Nelson v. United States*, 40 F.4th 1105, 1111 n.2 (10th Cir. 2022) (discussing a party's forfeiture of a forfeiture).

Therefore, we review this sentencing challenge for abuse of discretion.  *See, e.g.*, *Eddington*, 65 F.4th at 1237.  Challenges to notice are typically interpreted as procedural challenges.  *See, e.g.*, *United States v. Lente*, 759 F.3d 1149, 1153 n.1 (10th Cir. 2014) (treating an insufficient notice challenge at sentencing as a procedural challenge); *United States v. Holmes*, No. 23-6213, 2024 WL 3738442, at *1 (10th Cir. Aug. 9, 2024) (unpublished) ("Challenges to the notice requirement are generally regarded as *procedural*."). [5]

---

[5]    We rely on unpublished cases for their persuasive value and do not treat them as binding precedent.  *See United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015).

**1**

A district court is not required to provide defendants with advance notice of an upward variance. *See Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("[T]he [advance notice] rule does not apply to 18 U.S.C. § 3553 variances by its terms."). To prevent "unfair surprise at sentencing," the Supreme Court in *Irizarry* "chose to fashion a pragmatic, rather than categorical, solution to the problem." *United States v. Redmond*, 388 F. App'x 849, 855 (10th Cir. 2010). "Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues." *Irizarry*, 553 U.S. at 715. Importantly, "there will be some cases in which the factual basis for a particular sentence will come as a surprise," and "[t]he more appropriate response to such a problem is . . . for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial." *Id*. at 715–16.

**2**

As noted, Mr. Villela does not dispute that the district court was not required to provide advance notice of the upward variance. *See* Aplt.'s Reply Br. at 12. Instead, he raises three granular, notice-related arguments. We conclude that each is meritless.

As to his first argument—that "the sentencing occurred during a status conference in which defense counsel requested that the court consider holding the [g]overnment's revocation motion in abeyance," Aplt.'s Opening Br. at 16—

Mr. Villela notes that "when the factual or legal basis for adopting a variant sentence would come as a prejudicial surprise to a party, the court should provide advance notice or grant a continuance for further research and evidence," *id*. at 15. However, we are hard pressed to conclude that Mr. Villela was prejudicially surprised by the court's action to proceed to sentencing. Therefore, we reject this argument.

As a general matter, "[a] sentencing court has broad discretion respecting the scheduling of sentencing procedures." *United States v. Garcia*, 78 F.3d 1457, 1467 (10th Cir. 1996). Though Mr. Villela's counsel repeatedly urged the district court to hold the revocation petitions in abeyance so that Mr. Villela could enter the RIO program, when the court elected instead to commence the sentencing proceeding, by his own admission, Mr. Villela was not caught off guard. Mr. Villela acknowledges that "defense counsel accepted that the court might decide to go to sentencing after deciding whether or not to hold the [g]overnment's motion in abeyance." Aplt.'s Opening Br. at 16. And when the court turned to sentencing, Mr. Villela had ample opportunity to seek a continuance or similar relief to mitigate the effects of any ostensible surprise connected to the proceeding. Specifically, the court told Mr. Villela's counsel that if she "would like to go to sentencing today, [it would] give [her] more time," and inquired of counsel, "would you like for him to speak or . . . [would] you like to speak before he speaks." Aplt.'s App. at 73. In response, Mr. Villela's counsel did not make a threshold objection to commencing the sentencing proceeding and—despite his contention on appeal that he accepted the

28

court's movement to sentencing "reluctantly," Aplt.'s Opening Br. at 16—he expressed no reservations at the hearing regarding the court's sentencing plan.

Moreover, Mr. Villela admitted at the hearing to the factual basis for supervised-release violations; therefore, any suggestion that he was prejudicially surprised by the factual basis for the revocation sentencing rings hollow. And insofar as Mr. Villela claims that he was prejudicially surprised by the legal basis for the court's action due to the court's "reliance on Section 3553(a)(2)(A)," *id*., as reinforced below, his claim of prejudice is meritless. Accordingly, we reject Mr. Villela's first argument.

As to Mr. Villela's second argument, whether the government requested an upward variance prior to sentencing has no bearing on whether *the district court* provided sufficient notice to Mr. Villela. Mr. Villela's argument here is a veiled attack on the district court's decision to vary upward in the first place; however, as Mr. Villela has admitted, district courts ordinarily are not required to provide defendants with advance notice before varying upward. *See Irizarry*, 553 U.S. at 714.

Finally, in his third argument, Mr. Villela asserts that "the court's adoption of the upward variance came as a surprise to defense counsel, as the court relied on factors that a competent and reasonably prepared counsel would not be able to anticipate . . . . [because] the court based its sentencing decision in part on Section 3553(a)(2)(A)." Aplt.'s Opening Br. at 16–17. We conclude, however, that Mr. Villela's claim of legal prejudicial surprise is meritless. Even if Mr. Villela were

29

surprised by the court's reference to § 3553(a)(2)(A), he could not reasonably claim that he was prejudiced by that reference. For the reasons that we articulated *supra* in section II(A)(2)(c), notwithstanding its skeletal and formulaic references to § 3553(a)(2)(A), the district court's sentencing remarks are naturally and reasonably interpreted, in substance, as relying on permissible statutory factors, which take into account Mr. Villela's historical and continual inability to adhere to the terms of his supervised release and his related failure take seriously the processes put in place to aid his rehabilitation. Moreover, as we further noted, the court's remarks were clearly animated by the proper aim of sanctioning Mr. Villela's repeated breaches of the court's trust.

Therefore, any surprise that Mr. Villela could plausibly allege based on the introduction of § 3553(a)(2)(A) into his sentencing hearing cannot be deemed prejudicial. Stated otherwise, Mr. Villela attempts to repackage his first *Booker*-based challenge to the propriety of the district court's sentencing remarks as a "notice" challenge. However, we have already rejected Mr. Villela's *Booker*-based challenge—notably, for lack of prejudice—and he cannot fare any better here by claiming prejudice under the packaging of notice.

The district court thus did not abuse its discretion by failing to provide notice to Mr. Villela.

**III**

For the foregoing reasons, we **AFFIRM** the district court's sentencing judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge